## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

**MARIA V. ORTIZ-LARA**,
    Plaintiff,

    v.

**COMMISSIONER OF SOCIAL
SECURITY**,
    Defendant.

Civil No. 22-1437 (BJM)

## OPINION & ORDER

Maria V. Ortiz-Lara ("Ortiz-Lara") seeks review of the Social Security Administration Commissioner's ("the Commissioner's") finding that she is not entitled to benefits under the Social Security Act ("the Act"), 42 U.S.C. § 423. Ortiz-Lara contends the Administrative Law Judge ("ALJ") erred in determining that her carpal tunnel was not severe, interpreted raw medical data when determining her Residual Functional Capacity ("RFC"), and inappropriately determined she could perform other relevant work. Docket No. ("Dkt.") 16. The Commissioner opposed. Dkt. 21. This case is before me by consent of the parties. Dkts. 8, 9. For the reasons set forth below, the Commissioner's decision is **VACATED and REMANDED**.

## APPLICABLE LEGAL STANDARDS

After reviewing the pleadings and record transcript, the court has "the power to enter a judgment affirming, modifying, or reversing the decision of the Commissioner." 20 U.S.C. § 405(g). The court's review is limited to determining whether the Commissioner and his delegates employed the proper legal standards and found facts upon the proper quantum of evidence. *Manso-Pizarro v. Sec'y of Health & Hum. Services*, 76 F.3d 15, 16 (1st Cir. 1996). The Commissioner's findings of fact are conclusive when supported by substantial evidence, 42 U.S.C.§ 405(g), but are not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts. *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999); *Ortiz v. Sec'y of Health &*

*Hum. Services*, 955 F.2d 765, 769 (1st Cir. 1991). Substantial evidence means "'more than a mere scintilla.' . . . It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)) (internal citation omitted). The court "must affirm the [Commissioner's] resolution, even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence." *Rodríguez Pagán v. Sec'y of Health & Hum. Services*, 819 F.2d 1, 3 (1st Cir. 1987).

A claimant is disabled under the Act if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Under the statute, a claimant is unable to engage in any substantial gainful activity when he "is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). In determining whether a claimant is disabled, all the evidence in the record must be considered. 20 C.F.R. § 404.1520(a)(3).

The Commissioner employs a five-step evaluation process to decide whether a claimant is disabled. 20 C.F.R. § 404.1520; *see Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); *Goodermote v. Sec'y of Health & Hum. Services*, 690 F.2d 5, 6-7 (1st Cir. 1982). At Step One, the Commissioner determines whether the claimant is currently engaged in "substantial gainful activity." If so, the claimant is not disabled. 20 C.F.R. § 404.1520(b). At Step Two, the Commissioner determines whether the claimant has a medically severe impairment or combination of impairments. 20 C.F.R. § 404.1520(c). If not, the disability claim is denied. At Step Three, the

Commissioner must decide whether the claimant's impairment is equivalent to a specific list of impairments contained in the regulations' Appendix 1 (the "Listings"), which the Commissioner acknowledges are so severe as to preclude substantial gainful activity. 20 C.F.R. § 404.1520(d); 20 C.F.R. § 404, Subpt. P, App. 1. If the claimant's impairment meets or equals one of the listed impairments, he is conclusively presumed to be disabled. If not, the evaluation proceeds to Step Four, through which the ALJ assesses the claimant's RFC and determines whether the impairments prevent the claimant from doing the work he has performed in the past.

An individual's RFC is his ability to do physical and mental work activities on a sustained basis despite limitations from his impairments. 20 C.F.R. § 404.1520(e) and 404.1545(a)(1). If the claimant can perform his previous work, he is not disabled. 20 C.F.R. § 404.1520(e). If he cannot perform this work, the fifth and final Step asks whether the claimant can perform other work available in the national economy in view of her RFC, as well as age, education, and work experience. If the claimant cannot, then he is entitled to disability benefits. 20 C.F.R. § 404.1520(f).

At Steps One through Four, the claimant has the burden of proving he cannot return to the former employment because of the alleged disability. *Rodríguez v. Sec'y of Health & Hum. Services*, 944 F.2d 1, 5 (1st Cir. 1991). Once a claimant has done this, the Commissioner has the burden under Step Five to prove the existence of other jobs in the national economy the claimant can perform. *Ortiz v. Sec'y of Health & Hum. Services*, 890 F.2d 520, 524 (1st Cir. 1989). Additionally, to be eligible for disability benefits, the claimant must demonstrate that her disability existed prior to the expiration of her insured status, or her date last insured. *Cruz Rivera v. Sec'y of Health & Hum. Services*, 818 F.2d 96, 97 (1st Cir. 1986).

# BACKGROUND

The following facts are drawn from the transcript ("Tr.") of the record of proceedings.

On April 15, 2019, Ortiz-Lara filed an application for disability insurance benefits. Tr. 443–49. She alleged that her disability onset date was June 7, 2012. Tr. 443. Ortiz-Lara completed high school and an internship in billing administration. Tr. 39. She previously worked as an insurance analyst at a medical center for twenty years. Tr. 43–44. Her date last insured was December 31, 2017. Tr. 23 The Commissioner denied Ortiz-Lara's application for benefits initially, on reconsideration, and after a hearing before an ALJ. Tr. 65, 70, 15; 443. The record before the Commissioner, which included medical evidence and Ortiz-Lara's self-reports, is summarized below.

***Treating Sources***

**Dr. Rafael Miguez-Balseiro (Psychiatrist)**

Progress notes range from June 8, 2011 through November 6, 2020. Tr. 90-116; 188-219.

On February 14, 2012, Dr. Miguez-Balseiro noted that Ortiz-Lara was in billing and she does the work of two people. The company wanted her to cover another employee who is out sick. Ortiz- Lara does not want to feel so oppressed. Tr. 100.

On April 4, 2012, Dr. Miguez-Balseiro noted Ortiz-Lara felt anxious, nervous, tense, and wanted to stop working. Tr. 103. She does not concentrate well and sometimes becomes very anxious. She does not tolerate stress well. She rests well with medication. She feels like she's not treated well at her job. *Id.*

On May 16, 2012, Dr. Miguez-Balseiro noted Ortiz-Lara had anxiety and tachycardia. She did not want to continue working. She suffered from a lot of headaches. She was anxious, depressed and tolerates stress poorly. Tr. 106.

On June 29, 2012, Ortiz-Lara felt melancholic, tense, and worried. Tr. 105. She is always expecting negative things to happen. She was not concentrating well and says her mind goes blank. She did not want to leave the house. She believed others talk about her. Her appearance seemed neglected. Her behavior was suspicious, but she was also cooperative. Dr. Miguez-Balseiro noted Ortiz-Lara was anxious. Her process of thought was circumstantial and tangential. The flow of thought was slow. *Id.*

On July 31, 2012, Ortiz-Lara informed Dr. Miguez-Balseiro that she quit her job on June 7, 2012. She remained calmer now that she is at home. However, she was still not able to concentrate well and forgets things easily. Tr. 107.

On September 12, 2012, Ortiz-Lara was tense and worried. She told herself bad things. She had a lot of stress because of her husband. Tr. 108. On October 24, 2012, her family situation continued being stressful; so she would leave the house to clear her head. She had anxiety. She was very frustrated and upset. She had tachycardia and cannot sleep well. *Id.*

On November 27, 2012, Ortiz-Lara felt downcast, slow, tired. She felt anhedonia, sadness and a lack of motivation. She sometimes felt very depressed. Tr. 109. She did not concentrate well and forgot things a lot. She had crying spells. Her appearance seemed neglected. Her behavior was suspicious, but she was also cooperative. Dr. Miguez-Balseiro noted Ortiz-Lara was anxious. Her process of thought was circumstantial. The flow of thought was slow. She believed she was inadequate and has low self-esteem. *Id.*

On January 18, 2013, Ortiz-Lara's appearance seemed neglected. Tr. 110. Her attitude was suspicious but cooperative. She was also sad, weepy and not spontaneous. There was a delay in her motor activity. Her thoughts were logical, coherent and relevant. However, her flow of thought was slow and sometimes disorganized. *Id.* She was oriented at to her person, time and place. Her

judgment was erratic and would sometimes be very irritable. Dr. Miguez-Balseiro noted that her symptoms were chronic with poor response to treatment. He noted Ortiz-Lara was tired, sad and afraid that negative things would happen to her. Her mind went blank and she cannot concentrate well. Dr. Miguez-Balseiro noted she did not want to go out and did not persist with tasks. *Id.*

On February 27, 2013, Dr. Miguez-Balseiro noted Ortiz-Lara seemed to move slow. She was sometimes weepy, felt very downcast, and sad. She did not concentrate well; her mind just went blank. She also worried and expected negative things to happen. Her sleep was limited as she woke up many times at night. She also did not eat a lot. She did not have suicidal thought but thought a lot about death. Her flow of thought was slow and became disorganized when trying to elaborate on her thoughts. Her affect was restricted and had a severely depressive mood. She had impaired memory, poor concentration and poor socialization. Tr. 113.

On February 28, 2013, Ortiz Lara came to the appointment with a family member. Tr. 91. She was dressed in casual clothing, was cooperative but not spontaneous, she did not use make up, her hair was not put up and she was at times weepy. *Id.* Ortiz-Lara lived with her husband, whom she sometimes argued with about simple situations. She felt uncomfortable with herself and feels guilty because she believed she did not deserve to be with her husband. She had a loss of libido. In terms of her flow of thought, Dr. Miguez-Balseiro noted it was slow and had difficulty organizing her through and carrying them out progressively. She had to go back to her previous thought to be able to continue speaking. She believed her mind becomes blocked. There was psychomotor delay, but her speech was coherent and relevant. Ortiz-Lara felt a lot of inadequacy and despair. She said she was not good for anything. She thought a lot about death but did not see it as a solution to her problems. She had low self-esteem. *Id.*

Ortiz-Lara had trouble reciting numbers going backwards and forward. Tr. 93. She was able to repeat only one word out of five that were given to her five minutes before. She did not remember what she ate the night before and whether she had taken her medication. She had trouble keeping her attention to what was being asked or explained due to her psychomotor delay and crying spells. She had limited ability for arithmetic calculations, and limited general information. She did not want to know about things that happen. Everything bothered her, and she felt worse because of her attitude. *Id*. Her judgment was slow in dealing with day-to-day situations. Tr. 95.

Dr. Miguez-Balseiro noted she performed simple tasks at home. She needed help from others and must be taken to her medical appointments. In terms of her stress tolerance, Dr. Miguez-Balseiro noted that she became scared very quickly and became upset about anything. He also stated she was not able to work due to her intense and severe emotional condition. Ortiz-Lara's ability to focus attention and persist at tasks was poor. She appeared very slow; she needed supervision at home for her needs, including taking medications. She cannot carry out work duties even if they were short or simple. Dr. Miguez-Balseiro also noted that her social, work and interpersonal functioning were severely affected, which completely limited her ability to work. Ortiz-Lara made a big effort to continue with her duties, but she could not do it because of her mental state. She needed long-term treatment because Dr. Miguez-Balseiro did not expect she would make significant changes in the years to come. *Id.* Ortiz-Lara was being treated with pharmacology and psychotherapy. Dr. Miguez-Balseiro diagnosed Ortiz-Lara with recurrent major depressive disorder with severe anxiety. Her prognosis is poor. *Id.*

In April 2013, she felt very downcast, slow, tired and frustrated. Tr. 111. In October 2013, her family situations were very stressful. Her depression and anxiety continued to be intense, and

she did not feel like doing anything. Tr. 116. Her speech was coherent and relevant. However, she had diminished attention and poor concentration. *Id.*

In April 2014, Ortiz-Lara was very tense and worried because she had problems with her son and has asked him to leave the house. Tr. 115. Her sleep continued to be limited and there was a loss of nutrition. *Id.* On November 14, 2014, Dr. Miguez-Balseiro noted Ortiz-Lara's appearance seemed adequate. *Id.* at 130. She had a friendly attitude. There were delays in her motor activity. Her mood was depressed and anxious. Her thought process was logical, coherent and relevant. The flow of her thought process was slow. She was oriented as to time, place and person. She was alert. She was sometimes in a bad mood. Dr. Miguez-Balseiro also noted Ortiz-Lara did not concentrate well, she had crying spells and was very frustrated. She became irritated a lot. She was still not sleeping well. *Id.*

On February 17, 2015, Ortiz-Lara's sleep was better, but she only slept for four hours. Tr. 128. She presented as depressed and downcast. Her appearance seemed within normal limits. She was cooperative. However, she was fearful. She had thoughts of inadequacy. Her immediate and recent memory was okay. She was oriented to place and person but not oriented as to time. *Id.*

On May 27, 2015, Dr. Miguez-Balseiro noted Ortiz-Lara's appearance seemed adequate. Tr. 126. He noted her attitude was suspicious but cooperative. She was slow and tense. There were delays in Ortiz-Lara's motor activity. Her mood was depressed and anxious. Her thought process was logical, coherent and relevant. The flow of her thought process was slow. She was oriented as to time, place and person. She was alert. She was sometimes in a bad mood. Dr. Miguez-Balseiro also noted Ortiz-Lara was upset, discouraged and had lost interest in everything. She was not sleeping well and woke up scared. She saw everything in her life as negative. *Id.*

On September 22, 2015, Dr. Miguez-Balseiro noted Ortiz-Lara's appearance seemed adequate. *Id.* at 124. He noted her attitude was suspicious but cooperative. She was tense. There were delays in her motor activity. Ortiz-Lara's thought process was logical, coherent and relevant. The flow of her thought process was slow. She was oriented as to time, place and person. She was alert. Her judgment was sometimes very irritable. She also had feelings of guilt. Dr. Miguez-Balseiro noted that Ortiz-Lara told Dr. Burgos, her generalist, that she had a lot of inflammation, and pain in her arms, hands and her whole body. She was very frustrated, tired and slow. She felt downcast and physically and emotionally tired. *Id.*

On February 26, 2016, Dr. Miguez-Balseiro noted Ortiz-Lara preferred to be along; she doesn't tolerate noise and commotion. *Id.* at 122. She does not concentrate on things. She has crying spells and was always worried and scared. She woke up many times throughout the night. She had a depressed mood, restricted affect. Her movements are slow and had psychomotor delay. Finally, Dr. Miguez-Balseiro noted she had limited insight. *Id.*

On July 20, 2016, there was no significant change in her emotional state. She has changes in her mood. Tr. 160. She felt inadequate and worthless. She was afraid. She had a depressed mood. Her speech was coherent and relevant. She had limited insight. *Id.*

On November 29, 2016, she complained of having carpal tunnel syndrome on her right hand and that she had physical limitation and pain. Tr. 158. She felt depressed, sad, tired and frustrated. She sleeps two or three hours at night. She worries a lot. Her mood was depressed. Her speech was slow, coherent, and relevant. *Id.*

On December 24, 2016, Ortiz-Lara was anxious, worried and tense. Tr. 159. She was downcast and depressed. Her sleep varied and she had nightmares. She woke up easily throughout the night. Her speech was coherent and relevant. *Id.*

On March 7, 2017, Ortiz-Lara felt tense and worried. *Id.* She also felt depressed and anxious. She looked tense and had psychomotor delay. Her flow of thought was slow. *Id.* On July 14, 2017, Ortiz-Lara stated she spent the day at home and only went out for medical appointments. Tr. 157. Her mood was depressed. She did not hear anything out of her right ear, and she cannot see out of her right eye. Her speech was coherent and relevant. She thought she was inadequate. *Id.*

On November 15, 2017, Ortiz-Lara had a lot of worry and fears. Tr. 169. She does not see a way out of things, and everything is complicated for her. She is downcast, tense, depressed and is afraid of negative things. She does not concentrate well. There is psychomotor delay. She has crying spell and feelings of despair. *Id.* Her speech is coherent and relevant. *Id.*

**Optica Centro (Pueblo)**

Progress notes from April 9, 2014 are illegible. Tr. 118.

**Centro Fisiatrico del Plata**

Progress notes range from December 1, 2015 through November 8, 2018.

On December 1, 2015, Ortiz-Lara complained of bilateral hand numbness. Tr. 673. Her symptoms occur mostly at night. She denied having pain or tingling sensation. *Id.* On December 8, 2015, Ortiz-Lara was prescribed physical therapy. Tr. 600. She was diagnosed with bilateral carpal tunnel syndrome. Tr. 603. Hand surgery referral was considered. *Id.*

Other progress notes are largely illegible. Tr. 600-613; 658-674.

**Consolidated Radiology Complex, CSP**

On December 13, 2015, a study of her hands and wrists showed there was a mild narrowing of the distal interphalangeal joints, slightly more prominent in the first interphalangeal joints. There were no cortical erosions. The remaining joint spaces appeared preserved. The radiologist

stated that there was mild degenerative changes and a probable small cyst at the right fourth phalanx. Tr. 607. At the wrist, there were no acute fractures or dislocations. The joint spaces appeared preserved. *Id.*

**Dr. Juan Nevarez**

Dr. Nevarez prepared a report for the Disability Determination Program on August 9, 2019. Dr. Nevarez noted that Ortiz Lara complained of "sudden onset loss of vision [on the left eye] approximately twenty years ago." *Id.* at 699. He stated Ortiz-Lara was diagnosed with a retinal problem that was not treated. She was only given vitamins. Dr. Nevarez noted that Ortiz-Lara does not have light perception in her left eye. *Id.* He diagnosed her as blind on her left eye, retinal degeneration on her left eye and exotropia on her left eye. *Id.* at 700.

**Corporacion Puertorriqueña de Salud**

Progress notes range from June 22, 2015 through January 11, 2021 and are largely illegible. Tr. 774-796.

*Procedural History*

In a disability report dated April 17, 2019, Ortiz-Lara stated she suffered from depression, anxiety, loss of hearing in the right ear, loss of vision in the left eye, bilateral carpal tunnel syndrome and generalized pain and inflammation. Tr. 476. The field office called Ortiz-Lara to answer some questions that were left in blank in her disability report. Tr. 485. She answered all questions and was coherent.  Tr. 485.

A visual impairment medical report was created on May 3, 2019. The date of first examination was July 20, 2015 and the last date of examination was October 5, 2015. *Id.* at 696. Ortiz-Lara has a history of retinopathy in the left eye and exotropia in the left eye. The probable

cause of her visual impairment is unilateral retinitis pigmentosa. Her right eye had normal looking retina. While her left eye has multiple bony spicules, pale nerves and thinned out vessels. Tr. 697.

The physician evaluating Ortiz-Lara stated that she is legally blind from her left eye. Tr. 698. However, her right eye is normal, and the physician found Ortiz-Lara is not legally blind and can lift, carry, stand, walk, sit, push, pull, hear, speak, travel and handle objects without any help. Tr. 698.

In a function report dated, May 14, 2019, Ortiz-Lara stated that her condition limited her because she had poor tolerance towards things, and forgot everything. She did not see well because she lost her eyesight on the left eye. She also didn't hear in her right ear. Tr. 74. When asked about her daily activity, she explained she gets up, goes to the bathroom, eats breakfast. She cleans the house, and washes her clothes. Her sister brings her lunch and after dinner, Ortiz-Lara takes a bath and goes to bed. Tr. 75. Before her illness, Ortiz-Lara worked, cooked, went out for walks and went to church. *Id.* She can dress herself but the shirts have to be without buttons and pants with elastic. Her sister brushes her hair. She barely has an appetite. *Id.* She needs to be reminded to bathe herself and shave. She is reminded by her husband who leaves her written notes and her sister come to check in on her. Tr. 76. Her husband calls her to remind her to take her medications. She also places alarms to remind her to take her medications. She does not make her own food because she burns the food and leaves the stove on. She can clean the house and wash clothes. She does this weekly, and it takes her about three to five hours to complete the tasks. However, Ortiz-Lara needs encouragement to complete these chores. Her husband leaves a note to remind her, and her sister follows up with her. Tr. 76. She does not do garden chores because she's afraid to go outside.

Ortiz-Lara only leaves the house when she has appointments and only if she is accompanied by her husband or sister because she is afraid to go out alone. Tr. 77. She does not drive because she is afraid of getting into an accident. When she goes shopping, she buys personal things and goes to the supermarket. She does this once a month and it takes her four to five hours. Her hobbies are listening to music and watching television, which she does daily. Tr. 77. Ortiz-Lara no longer spends time with family or other people. Tr. 78. She has trouble having relationships with family, friends, neighbors or others because her temperament is not very good and she is angry all day. Tr. 78.

Ortiz-Lara cannot pay her bills, count change, maintain a savings account, write checks or money orders because she does not concentrate. She states that her ability to handle money has changed since her conditions began. Before her condition, Ortiz-Lara was able to do everything and now, she becomes depressed when she cannot handle her money. Tr. 77.

Since her conditions, Ortiz-Lara's ability to bend over, talk, hear, see, remember, finish assignments, concentrate, comprehension, follow instructions and get along well with others have been affected. Tr. 78. She cannot bend over because she had an operation. She cannot see from her left eye and cannot hear from her right ear since she had surgery on it. She stated she cannot concentrate. Tr. 78. She has difficulty walking and needs to rest for about thirty minutes before being able to walk again. Tr. 79. She is able to follow written instructions but not oral ones because she forgets them. She has never been laid off or suspended from work. Tr. 79. Ortiz-Lara handles her stress through medication. She can handle changes in her routine when she is taking her medication. She believes people are going to hurt her. Tr. 79. She uses eyeglasses all the time. Tr. 80.

In another disability report dated October 31, 2019, Ortiz-Lara did not claim any changes to her physical or mental conditions. Tr. 498. She was taking alprazolam for anxiety; sertraline for depression; temazepam and trazondone for insomnia. Tr. 501. She claimed to need help from family and relatives to get to her appointments because she cannot drive. She also needed help to do house chores and needed to be motivated by her family to do her daily things. Tr. 502.

Ortiz-Lara filled out another function report on December 13, 2019. Tr. 82. Ortiz-Lara stated she no longer had the same ability nor the same tolerance. She always walks around irritated; she does not like to be where there are a lot of people. She does not see well from her left eye and has poor hearing in her right ear. Tr. 82. She cannot concentrate and forgets everything. Tr. 82.

When asked about her daily activity, Ortiz-Lara explained she wakes up at 8 a.m., goes to the bathroom, picks up around the house a little. Her sister comes by the house to bring Ortiz-Lara food and help her around the house. Finally, she goes to bed. Tr. 83. Before her conditions, she used to work, was able to spend time with other or take a walk. She used to go to church. Tr. 83. She does not sleep well even with medication because she feels pain and anxiety. Tr. 83.

Ortiz-Lara can dress herself with shirts without buttons and pants that have an elastic waist. There are days she does not feel like bathing. Ortiz-Lara's sister helps her to care for her hair. Ortiz-Lara can shave with help. She lacks an appetite to eat. Tr. 83. She needs to be reminded by her husband to attend her needs and personal care. He also reminds her to take her medication. Tr. 84. She does not make her own meals because she burns the food and leaves the stove turned on. *Id.* She can wash dishes. It takes her three to five hours. *Id.* She is afraid to go out to the yard and only leaves the house when she has an appointment. When she leaves the house, she travels as a passenger in the car and is accompanied by her husband or sister. Ortiz-Lara does not drive because she is afraid of getting in an accident. Tr. 85. She goes shopping once a month at the stores

accompanied by her husband or sister. She is not capable of paying her bills, counting change, maintaining a savings accounts or writing checks because she cannot concentrate. *Id.* She was able to administer her money before her conditions began. After her conditions, she becomes depressed when she cannot do it. Tr. 86.

She enjoys listening to music and watching TV. However, she no longer goes out nor spends time with her family. *Id.* She also does not spend time with other people. The places she visits regularly are her doctor and the supermarket. She needs to be reminded to go to these places and needs to be accompanied by someone. *Id.* She does not have a good relationship with others because she does not have a good temperament and spends the day being angry. Since her condition began, she wants to be alone. Tr. 87.

After her conditions began, she cannot bend over, she cannot see from her left eye and cannot hear well since her operation on her right ear. She also cannot concentrate. *Id.* Ortiz-Lara cannot walk a lot because of the operation. She has to wait for about half hour before she can start to walk again. She can pay attention for five to ten minutes. She can follow written instructions but not oral instructions. *Id.* She feels safe with the police. She has never been suspended or laid off from work. *Id.* at 88. She handles stress with medication. She can handle changes in routine when she takes her medication. Without them, she becomes upset at changes in routine. *Id.* Ortiz-Lara believes people are going to hurt her. She wears eyeglasses all the time. *Id.* She cannot see out of left eye and cannot hear from her right ear. She takes medication for her conditions and does not have side effects. Tr. 89.

In a third disability report dated March 31, 2020. Tr. 513. Ortiz-Lara did not claim any changes to her physical or mental conditions. Tr. 516. She is taking alprazolam for anxiety; sertraline for depression; temazepam and trazondone for insomnia. Tr. 519. Ortiz-Lara stated she

needed constant motivation and help from relatives and family to remember her daily activities and to get to her appointments because she cannot drive. Tr. 520.

On August 12, 2019, Ortiz-Lara's claim was initially denied, with a finding that her conditions have some limitations in the performance of certain work activities; however, these limitations would not prevent the individual from performing past relevant work as a medical clerk. *Id.* at 328-29. Ortiz-Lara requested reconsideration. Tr. 352-353. Ortiz-Lara's claim was denied on reconsideration on January 10, 2020. Tr. 331-344.

A hearing was held via telephone on March 17, 2021 before ALJ Judith Torres. Tr. 366-70. Ortiz-Lara testified that she worked as an insurance analyst at HIMA San Pablo for 20 years. Tr. 43-44. She supervised five or six people. Tr. 43. She sat down six and a half hours. Tr. 44. She lifted about 60 to 70 pounds. Tr. 44.

In 2017, she had surgery on her uterus so she could not sit or stand very long. She had to get up and walk between seven minutes to half an hour. Tr. 45. She could sit for half an hour to an hour before having to change positions or stand up. Tr.45-46. Ortiz-Lara could lift 5 pounds. Tr. 46.

Ortiz-Lara testified that her anxiety, depression and cardiac issues prevent her from being able to work. She also stated that she cannot hear well on her right side and cannot see well out of her left eye. She cannot concentrate well on things and forgets what she is doing; she has to write it down in order to complete the task. Tr. 46. She has not been diagnosed with carpal tunnel. Tr. 47.

Ortiz-Lara has had five operations in her right ear. Tr. 47. She went back to work after her surgeries. Tr. 47. She cannot see anything from her left eye. Tr. 48. She wears glasses for her right eye. Tr. 48. She visits her ophthalmologist annually. Tr. 48.

She is being treated for her anxiety and depression by her psychiatrist. Tr. 48-49. She saw her psychiatrist every three months. Tr. 57. She testified that sometimes she was happy and sometimes she was sad. Tr. 49. Everything annoys her. Tr. 49. She stated she wants to be alone and does not leave the house because it scares her. Tr. 49. She becomes anxious when someone is arguing. She also does not tolerate a lot of people in one place. Tr. 49. She is taking four medications for anxiety, depression and sleeping. Tr. 50. She does not take any medication for a physical condition. Tr. 50.

Ortiz-Lara testified that when she gets up in the morning, she can bathe and dress herself. Tr. 51. She takes medication in the morning, but she does not remember which ones unless her husband writes down what she has to take. Tr. 51. Her sister prepares breakfast for her. Tr. 51. She can clean the house and wash clothes. Tr. 52. She listens to music and watches TV sometimes. Her husband pays the bills because she cannot concentrate. She goes shopping with her husband. Tr. 52. From 2012 to 2017, she did not participate in any social, religious activities or family gatherings. Tr. 52.

Vocational expert ("VE") Eligio Hinojosa testified that Ortiz-Lara's insurance clerk job was a Specific Vocational Preparation ("SVP") of five, at a sedentary level. Tr. 59.  The ALJ asked the VE if a person with the same age, education and past work as Ortiz-Lara could perform her past job considering the following: no physical limitations, but can perform simple and routine tasks for following instructions, using judgment, and changes in the work environment, who responds frequently to supervisors and coworkers and occasionally with the public. The VE answered that such a person could not perform Ortiz-Lara's past work but could perform other work in the national economy, such as laundry worker, hand packager, and industrial cleaner, all SVP of two, at a medium exertion level.  Tr. 59-60.

The ALJ asked the VE whether Ortiz-Lara could work given the following limitations: could lift, carry, push, pull 20 lbs. occasionally, 10 lbs. frequently; who can sit for six hours in an eight-hour shift, standing or walking for six; can climb ramps and stairs occasionally, never ladders, ropes, and scaffolds; can balance frequently; can frequently stoop, kneel, and crouch; can occasionally crawl; can never work at unprotected heights, occasionally with moving mechanical parts and operating a motor vehicle; can occasionally work in extreme cold and vibration; can perform work activities that require occasional depth perception; has sufficient visual acuity and visual field to occasionally find objects; is able to avoid ordinary hazards in the workplace, such as boxes on the floors, open doors, approaching people in vehicles. The claimant can never work in jobs that require perfect binocular vision or peripheral vision on the blind side, which is the left side. She requires adequate protection for the right eye, for even low-risk activities. And should avoid jobs where goggles cannot be worn. The VE testified that such a person could not perform their past jobs but could be a garment sorter, and a housekeeping cleaner. Tr. 61-62.

Ortiz-Lara's counsel asked the VE whether a person with the same limitations the ALJ presented but having to be off tasks 15% of the day could perform any of the jobs previously mentioned. The VE stated she could not perform those jobs. Tr. 62.

On May 7, 2021, the ALJ found that Ortiz-Lara was not disabled under sections 216(i) and 223(d) of the Act. Tr. 15-32. After determining Ortiz-Lara was last insured on December 31, 2017, the ALJ made the following findings at Steps One through Five:

(1)     Ortiz-Lara had not engaged in substantial gainful employment during the period of her alleged onset.

(2)     She had the following severe impairments: major depressive disorder and left retinal degeneration and bilateral cataracts.

(3)    She did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404-1526).

(4)    From the alleged onset date through the date late insured, she can understand, remember, and carry out instructions for simple, routine tasks; use judgement and deal with changes in the work setting for simple work-related decisions; is able to interact with supervisors and coworkers frequently and with the public occasionally. From July 20, 2015 through the date last insured, she was limited to work at less than the full range of light work.[1] Accordingly, Ortiz-Lara can lift, carry, push and pull 20 pounds occasionally and 10 pounds frequently; sit for 6 hours in an 8-hour workday, stand and/or walk for 6 hours in an 8-hour workday. She can climb ramps, and stairs occasionally, never climb ladders, ropes, or scaffolds, balance frequently, stop frequently, kneel frequently, crouch frequently, crawl occasionally. She can never work at unprotected heights, can work moving mechanical parts occasionally and operating a motor vehicle occasionally, in extreme cold occasionally, in vibration occasionally. From a visual standpoint, Ortiz-Lara is able to perform work activities that require occasional depth perception ability, has sufficient acuity and visual field to occasionally find objects, able to avoid ordinary hazards at workplace, such as boxes on the floor, doors ajar, or approaching people or vehicles. Additionally, the claimant should avoid work that requires perfect binocular vision or peripheral vision on the blind side – left side, she requires adequate protection of the better eye – right side for even low risk activities and should avoid jobs were goggles cannot be worn. From a mental standpoint, the claimant can understand, remember and carry out instructions for simple, routine

---

[1] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(b).

tasks; use judgment and deal with changes in the work setting for simple work-related decisions; is able to interact with supervisors and coworkers frequently and with the public occasionally. Therefore, she could not perform past relevant work.

(5)     However, as per her age, education, work experience and RFC, Ortiz-Lara could perform jobs that existed in significant numbers in the national economy.

The Appeals Council denied review and the present complaint followed. Dkt. 1.

## DISCUSSION

Ortiz-Lara contests the ALJ's findings at Step Two through Five. Dkt. 16. At Step Two, she argues that the ALJ erred in determining that her carpal tunnel syndrome was not severe. *Id.* at 16-17. At Step Three, she argues that the ALJ erred in determining that her depression did not meet Listing 12.04. *Id.* at 12-13. At Step Four, she argues that the RFC was not supported by substantial evidence, and that the ALJ interpreted raw medical data.. *Id.* at 15-16. Finally, at Step Five, Ortiz-Lara argues the ALJ erred in using "the light chart of the grids." *Id.* at 18. I address each argument below.

### A.  *Step Two*

Ortiz-Lara argues that the ALJ wrongly determined her carpal tunnel syndrome was not severe because there was substantial evidence reflecting Ortiz-Lara's treatments and the ALJ disregarded evidence from the relevant time period. *Id.* at 16-17. The Commissioner concedes that the ALJ improperly stated parts of her record postdated her date last insured. Dkt. 21 at 10. However, the Commissioner states these records do not change the outcome because one of the records is a bone density report and another is bloodwork analysis. *Id.* at 10-11.  He also states that there is no substantial evidence on the record to support the condition's severity because the notes are largely illegible. *Id.* at 11.

The Commissioner is correct that the medical record is largely illegible. See Tr. 658-74; 774-96. However, when notes are illegible, it is the ALJ's duty to develop the record. *See Tegan v. Saul*, 546 F.Supp.3d 162, 170 (D.R.I. 2021); *see also Williams v. Colvin*, No. 15-cv-05352 JRC, 2015WL 7018742 at *2 (W.D. Wash. 2015). The ALJ determined that Ortiz-Lara's carpal tunnel and pain in her hands was not severe. Tr. 23. Such a conclusion could not be reached if the notes are illegible. If the ALJ needed more information, she should have developed the record further. *See Sims v. Apfel*, 530 U.S. 103, 110-11, 120 S.Ct. 2080, 2085 (2000) ("[i]t is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits."); *Boneta Roman v. Saul,* No. CV 19-1835 (CVR), 2021 WL 4592282, at *6 (D.P.R. Apr. 30, 2021). As such, I cannot say there is substantial evidence supporting the ALJ's determination that carpal tunnel was not severe.

Ortiz-Lara also argues that the ALJ did not consider evidence during the relevant period. She cites to evidence from Centro Fisiatrico del Plata and Hospital Hima San Pablo. The notes from Centro Fisiatrico del Plata are illegible. Tr. 119-37. As such, I cannot say if they are outcome determinative. As stated above, the ALJ needed to develop the record and failed to do so.

In terms of the records from Hospital Hima San Pablo, there is a bone density report from 11/21/2017, which stated that her lumbar spine and both hips were within normal limits. There is also bloodwork from 11/18/2017 (Tr. 770-72). I agree with the Commissioner; these records are not outcome determinative.

### B.  *Step Three*

Ortiz-Lara asserts that the ALJ erred in finding her impairments did not equal the severity of a listed impairment. Dkt.16 at 12-13. However, this claim is waived because Ortiz-Lara fails to state specifically how the ALJ erred. As such, she failed to develop this argument. *See United*

*States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived").

### C. *Step Four*

Ortiz-Lara makes three arguments: (1) the ALJ interpreted raw medical data, (2) the ALJ made up the RFC and (3) the RFC was not supported by substantial evidence.

As a lay person, an ALJ is not qualified to interpret raw data in a medical record in functional terms. *Pérez v. Sec'y of Health & Hum. Servs.*, 958 F.2d 445, 446 (1st Cir. 1991). Unless the medical evidence before the ALJ suggests a relatively mild physical impairment posing no significant exertional restrictions to the layperson's eye, the ALJ must measure the claimant's capabilities, a process to which an expert's RFC evaluation is essential. *Manso-Pizarro*, 76 F.3d at 17–18. Accordingly, the First Circuit has repeatedly held that where the record is bereft of any medical assessment of RFC, and an ALJ reaches conclusions about a claimant's physical exertional capacity nonetheless, her conclusions are not supported by substantial evidence and remand is necessary. *Pérez*, 958 F.2d at 446. *See also Rosado v. Sec'y of Health & Hum. Servs.*, 807 F.2d 292, 293–94 (1st Cir. 1986) ("By disregarding the only [RFC] evaluation in the record, the ALJ in effect has substituted his own judgment for uncontroverted medical opinion. This he may not do."); *Berrios v. Sec'y of Health & Hum. Servs.*, 796 F.2d 574, 576 (1st Cir. 1986) ("[T]he Secretary must have relied heavily if not exclusively on the rheumatologist's report and the two normal myelograms. We cannot decipher the medical jargon in this report and we do not understand the significance of the various clinical tests. We do not think the Appeals Council, composed of lay persons, was competent to interpret and apply this raw, technical medical data."); *Lugo v. Sec'y of Health & Hum. Servs.*, 794 F.2d 14, 15 (1st Cir. 1986) ("None of the physicians who examined claimant provided any medical findings concerning the impact of his

heart condition on his [RFC].... Neither the Appeals Council nor this court is qualified to make this medical judgment about [RFC] based solely on bare medical findings as to claimant's heart condition."); *Rivera-Figueroa v. Sec'y of Health & Hum. Servs.*, 858 F.2d 48, 52 (1st Cir. 1988) ("[T]he ALJ appears to have interpreted the medical data himself to conclude that[ ] ... claimant ... had the physical capacity to perform a full range of medium work.... [W]e question the ALJ's ability to assess claimant's physical capacity unaided even by an RFC assessment from a nonexamining doctor."); *Manso-Pizarro*, 76 F.3d at 19 ("[G]iven the illegibility of non-trivial parts of the medical reports, coupled with identifiable diagnoses and symptoms that seem to indicate more than mild impairment, we believe that the record alerted the ALJ to the need for expert guidance regarding the extent of the claimant's [RFC] to perform her particular past employment.").

Plaintiff's contention that the ALJ improperly interpreted "raw" medical evidence in making her RFC finding springs from the fact that the Disability Determination Services did not obtain an RFC assessment from a medical consultant due to its finding that Ortiz-Lara's impairments were non-severe. The ALJ also found the opinion of the treating physician, Dr. Miguez-Balseiro, unpersuasive because there was no objective medical data to support it. The ALJ was left to determine Plaintiff's RFC without the benefit of medical opinions. The record was replete with evidence about Ortiz-Lara's debilitating mental condition, how she is anxious and cannot concentrate; however the record is lacking a medical opinion describing the specific ways in which those disorders limited Ortiz Lara's functioning. To come to a reasonable conclusion regarding Ortiz-Lara's limitations, the ALJ required additional evidence, including a consultative examination. *See Johnson v. Comm'r of Soc. Sec.*, 351 F. Supp. 3d 286, 293, (W.D. N.Y. 2018) (ALJ should have secured a consultative examination where medical records lacked information

relevant to the type of functional limitations needed to assess a physical RFC and no acceptable medical sources provided an opinion regarding claimant's physical RFC); *Shaneena W-M v. Berryhill*, 2019 WL 4193416, at *8 (S.D. Cal. 2019), *report and recommendation adopted*, 2019 WL 4688798 (S.D. Cal. 2019) (where record lacked an opinion from any treating or examining physician regarding plaintiff's work-related limitations caused by her severe mental impairment or any mental RFC assessment, ALJ's failure to order consultative examination was error requiring remand). Thus, in determining Plaintiff's RFC, the ALJ in effect "substituted h[er] own judgment for uncontroverted medical opinion," a decision which the First Circuit has clearly and repeatedly frowned upon. Manso-Pizarro, 76 F.3d at 19. As such, a remand is required.

   As for the other issues raised by Ortiz-Lara, the ALJ is directed to reevaluate the record anew on remand, and determine anew whether Ortiz-Lara was disabled.

## CONCLUSION

   For the foregoing reasons, the Commissioner's decision is **VACATED and REMANDED**. To be clear, I express no view as to what the determination should be on remand, but do believe that it should be made with the benefit of an expanded record.

   **IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 20th day of March 2024.

                              S/ *Bruce G. McGiverin*
                              BRUCE J. McGIVERIN
                              United States Magistrate Judge